**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **LEON GILMORE,** | ) CASE NO.  1:05 CV 2084 |
| | )              1:03 CR 308 |
| Petitioner, | ) |
| | ) JUDGE DAN AARON POLSTER |
| vs. | ) |
| | ) |
| **UNITED STATES OF AMERICA,** | ) <u>**MEMORANDUM OF OPINION**</u> |
| | ) <u>**AND ORDER**</u> |
| Respondent. | ) |

Before the Court is the *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed by Petitioner Leon Gilmore on August 30, 2005 ("Motion") **(ECF No. 1)**. On September 26, 2005, the Government filed a response. *ECF No. 5*. For the reasons to follow, the Motion is **DENIED**.

**I.**

On November 12, 2004, Gilmore was convicted, pursuant to a guilty plea under a written plea agreement, of one count of conspiracy to possess with the intent to distribute and to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count 1). *See Case No. 1:03 CR 308; ECF Nos. 309, ("Judgment and Commitment"), 306* ("*Plea Agreement*"). At Gilmore's sentencing hearing, the Court concluded that Gilmore was at adjusted offense level 27, Criminal History Category I (70-87 months), and sentenced

Gilmore to 80 months' imprisonment. *Case No. 1:03 CR 308; ECF No. 441, Tr. of Sentencing Hr'g,* ("Sentencing Hr'g Tr."), at 3-4.

The relevant terms of the Plea Agreement provide as follows. In consideration of Gilmore's guilty plea to Count 1 of the Indictment, the government agreed to dismiss the remaining charges against Gilmore. *Plea Agreement* ¶ 12. The government further agreed to recommend a three-level reduction for acceptance of responsibility and stipulated that Gilmore might be eligible for a safety valve reduction. *Id.* ¶¶ 7-8. *See also Case No. 1:03 CR 308; ECF No. 445, Change of Plea Hearing Transcript,* ("Change of Plea Hr'g Tr."), at 3. Gilmore agreed not to seek a downward departure from the applicable Guidelines range, *id.* ¶ 11, and expressly waived his right to appeal or collaterally attack his conviction or sentence with the exception of the right to appeal the imposition of any sentence inconsistent with the terms of the Plea Agreement and the right to assert claims of ineffective assistance of counsel or government misconduct, *id.* ¶ 13.

Before accepting a guilty plea, the Court must inform the defendant of and determine that he understands the terms of any appellate-waiver provision in the plea agreement. FED. R. CRIM. P. 11(b)(1)(N); *United States v. McGilvery,* 403 F.3d 361, 363 (6th Cir. 2005) (enforcing appellate-waiver provision in the plea agreement where the district court ascertained that the defendant understood that provision); *United States v. Murdock,* 398 F.3d 491, 495-96, 499 (6th Cir. 2005) (finding that the district court's failure to inquire into the defendant's understanding of the appellate-waiver provision of his plea agreement rendered the waiver unenforceable).

On April 28, 2004, a change of plea hearing was held at which time the prosecutor stated on the record the relevant terms of the plea agreement. *Change of Plea Hr'g*

*Tr.,* at 2-4. The Court explained the terms of the appellate-waiver provision to Gilmore and insured that Gilmore understood that provision. *See Change of Plea Hr'g Tr.*, at 11-12. Furthermore, Gilmore indicated on the record that no one, including his attorney, made any promises to him, other than those contained in the written plea agreement, to induce him to plead guilty. *Id*. at 7.

On November 10, 2004, a sentencing hearing was held before Judge Paul R. Matia[1] at which time Gilmore's attorney requested that the court sentence Gilmore to the low end of the Guidelines range (70 months' imprisonment). *Sentencing Hr'g Tr.,* at 3. Defense counsel also requested that the court recommend to the Bureau of Prisons ("BOP") that Gilmore participate in the Shock Incarceration ("SI") Program once he had 30 months remaining on his sentence. *Id*. at 3-4 ("I would ask the Court to recommend to the Bureau of Prisons that Mr. Gilmore is eligible under their criteria, that at the 30 months period of his sentence, he be allowed to participate in the shock incarceration program . . . ."). The Court sentenced Gilmore to 80 months' imprisonment and stated as follows: "I will also include a recommendation that [Gilmore] be considered for the shock incarceration program." *Id.* at 4, 6. *See also Judgment and Commitment,* at 2. Consistent with the recommendation of the Sixth Circuit in *United States v. Koch,* No. 02-6278, 2004 WL 1870438, at *1 (6th Cir. Aug. 13, 2004), the Court imposed an alternative advisory sentence of 80 months' imprisonment in the event the Guidelines were declared unconstitutional. *Sentencing Hr'g Tr.*, at 6.

---

[1] On February 9, 2005, Gilmore's criminal case was transferred to the docket of the undersigned. *See Case No. 1:03 CR 308; ECF No. 346*.

**II.**

Title 18 U.S.C. § 4046 expressly authorizes the BOP to place consenting inmates in a shock incarceration program.[2] Successful completion of the program may allow participants to serve a shorter prison sentence. *See* § 4046(c); *Vega v. United States,* 269 F. Supp. 2d 528, 532 (D.N.J. June 12, 2003). Section 4046(a) limits program participation to prisoners sentenced to a period of incarceration no greater than 30 months. However, the BOP has long permitted defendants sentenced to prison terms as high as 60 months to participate in the SI Program. *See Vega,* 269 F. Supp. 2d at 532; *United States v. Pipitone*, 67 F.3d 34, 37 (2d. Cir. 1995).

---

[2]Title 18 U.S.C. §4046 provides as follows:

>(a) The Bureau of Prisons may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30, months, if such person consents to that placement.
>
>(b) For such initial portion of the term of imprisonment as the Bureau of Prisons may determine, not to exceed 6 months, an inmate in the shock incarceration program shall be required to--
>
>>(1) adhere to a highly regimented schedule that provides the strict discipline, physical training, hard labor, drill, and ceremony characteristic of military basic training; and
>>
>>(2) participate in appropriate job training and educational programs (including literacy programs) and drug, alcohol, and other counseling programs.
>
>(c) An inmate who in the judgment of the Director of the Bureau of Prisons has successfully completed the required period of shock incarceration shall remain in the custody of the Bureau for such period (not to exceed the remainder of the prison term otherwise required by law to be served by that inmate), and under such conditions, as the Bureau deems appropriate.

Under the U.S. Sentencing Guidelines, a court "may recommend that a defendant who meets the criteria set forth in 18 U.S.C. § 4046 participate in a shock incarceration program." U.S.S.G. § 5F1.7. Here, as previously indicated, the sentencing court recommended that Gilmore be considered for the SI Program. Approximately two (2) months after Gilmore was sentenced, however, the BOP discontinued the SI Program. *ECF No. 3*, *Mem. of Law Supp., etc.* ("Petr.'s Br."), at 5.

On August 30, 2005, Gilmore filed the instant § 2255 Motion, claiming that he was denied the effective assistance of counsel because counsel misconstrued relevant sentencing law. *Petr.'s Br.,* at 1. Specifically, Gilmore argues that his counsel was not aware that defendants who are sentenced to greater than 60 months' imprisonment are ineligible for placement in the SI Program. *Id.* at 5. Had counsel known this, he could have pursued other sentencing alternatives that would have resulted in a less severe or "more suitable" sentence. *Id.* Gilmore argues that there is a reasonable probability that the court would have sentenced him more favorably given its express recommendation that he be placed in the SI Program where he would have served a sentence "significantly less than 80 months." *Id*. at 1. He requests that the Court re-sentence him or grant him an evidentiary hearing pursuant to § 2255 to establish his claim. *Petr.'s Br.,* at 18.

**III.**

Under 28 U.S.C. § 2255, a federal district court may grant relief to a prisoner in custody under a sentence imposed by that court "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." *Id*. To prevail on a § 2255

5

claim, the petitioner must show a fundamental defect in the proceedings "which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Nagi v. United States*, 90 F.3d 130, 133-34 (6th Cir. 1996) (quoting *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994)).

Claims of ineffective assistance of counsel are analyzed under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). "To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish two elements: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 694). A review of counsel's performance must be highly deferential and requires the Court to "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689). As to the second "prejudice" prong, the Supreme Court has stated that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694).

The *Strickland* standard applies to guilty pleas as well. *Hill v . Lockhart*, 474 U.S. 52, 57 (1985). In the guilty plea context, the first *Strickland* element is the same. *Griffin*, 330 F.3d at 736. However, the prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Griffin*, 330 F.3d at 737 (citing *Hill*, 474 U.S. at 58-59).

**IV.**

In his § 2255 motion, Gilmore claims that counsel was ineffective because he requested that the Court recommend placement in a BOP program for which Gilmore was not eligible. *Petr.'s Br.,* at 1. As a result, Gilmore argues that he was sentenced pursuant to an inaccurate understanding of the law. *Id.* Gilmore claims that counsel's assurance that he would be recommended for and placed in the SI Program was a "key factor" in his decision to plead guilty to Count 1 of the Indictment. *Id.* at 6. According to Gilmore, counsel informed him that he would only serve about 36 months of his sentence were he to participate the SI Program. *Id.* at 3. This argument is not well-taken. There is nothing in the plea agreement about the SI Program, and Gilmore expressly acknowledged that "no threats, promises, or representations have been made, nor agreements reached, other than those set forth in th[e ] [plea] agreement, to induce [him] to plead guilty." *Plea Agreement* ¶ 16. It is noteworthy that two paragraphs later Gilmore further acknowledged that no assurances or representations had been made *by the government* or any of its representatives that are not contained in the plea agreement. *Id.* ¶ 18. The absence of any similar limiting language in paragraph 16 implies that no promises or representations, other than those set forth in the plea agreement, were made by *anyone,* including defense counsel, to induce Gilmore to plead guilty.

Furthermore, during the change of plea colloquy, Gilmore indicated on the record that no one, <u>including his attorney</u>, made any promises to him, other than those contained in the written plea agreement, to induce him to plead guilty. *Change of Plea Hr'g Tr.,* at 7.

Gilmore does not demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Rather, he claims that had

7

counsel known of his ineligibility for the SI program, counsel could have pursued the following sentencing alternatives.

First, Gilmore claims that counsel could have moved for a downward departure to 60 months to ensure eligibility. *Id.* However, such a request would have flatly contradicted the terms of the Plea Agreement under which Gilmore "agree[d] not to seek a downward departure from the applicable guidelines imprisonment range." *Plea Agreement* ¶ 11. Accordingly, this argument is not well-taken.[3] *See also Vega v. United States,* 269 F. Supp. 2d 528, 536 (D.N.J. 2003) (finding that the petitioner was not denied the effective assistance of counsel where counsel failed to move for a downward departure to enable the petitioner to qualify for the SI Program).

Gilmore also argues that counsel could have requested a continuance pending the U.S. Supreme Court's decision in *United States v. Booker,* 125 S.Ct. 738 (2005). *Petr.'s Br.,* at 5. He also claims that the court asked both attorneys if they wanted to proceed given that *Booker* might require re-sentencing, and that he would have insisted on a continuance had he known of his ineligibility for the SI Program. *Id.* at 4-5, 16 n.3. First, the transcript of the sentencing hearing reflects that the court did not make such an inquiry. Second, this argument ignores the fact that the sentencing judge did impose an alternative advisory sentence of 80 months' imprisonment in the event the Guidelines were declared unconstitutional. *Sentencing Hr'g Tr.,* at 6. Furthermore, Gilmore has failed to overcome the presumption that, under the

---

[3]Gilmore argues in a footnote that he would have insisted that counsel pursue other sentencing options, such as a request for placement in a drug program (which would have resulted in a one-year sentence reduction) had he known that he was not eligible for the SI Program. *Petr.'s Br.,* at 16 n.3. However, Gilmore does not specify the type of program to which he is referring or demonstrate that he would be eligible for such a program. He also does not explain how counsel was ineffective for failing to make such a request.

circumstances, counsel's decision not to request a continuance "might be considered sound trial strategy." *Strickland,* 466 U.S. at 689 (citing *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)).

Gilmore makes the incredible claim that Judge Matia indicated at sentencing that Gilmore would only serve about 36 months of his 80-month sentence due to his participation in the SI Program. *Petr.'s Br.,* at 15. *See also id.* at 5 ("[T]he court commented that Gilmore would do 30 months prior to going into the SI program and then, once in the program, he would do about six (6) additional months before being released."). In support of this assertion, Gilmore relies on his own "declaration" filed in support of his § 2255 Motion. *Id. See ECF No. 4,* at ¶ 20. Contrary to this declaration, nothing in the sentencing transcript suggests that Judge Matia made the above-referenced comment or "verbally acknowledged [that placement in the SI Program] would result in Gilmore serving a sentence significantly less than the one imposed." *See Petr.'s Br.,* at 1.

Gilmore further argues that the Court could have sentenced him to the low end of the Guidelines range (70 months). *Id.* at 16. While this is true, this does not demonstrate any ineffectiveness of Gilmore's attorney. To the contrary, the record reveals that defense counsel explicitly asked the Court to impose a sentence of 70 months' imprisonment, and the Court denied the request. *Sentencing Hr'g Tr.* at 3.

Finally, Gilmore cites *United States v. Eakman*, 378 F.3d 294 (3d Cir. 2004), in support of his claim that he was prejudiced by counsel's misunderstanding of relevant sentencing law. *Eakman*, which is not binding on this Court, is also distinguishable. There, a federal prisoner appealed the denial of his § 2255 petition, arguing that his current sentence was unconstitutional because the sentencing judge relied on a mistaken understanding of the law in

believing that the BOP had the discretion to place him in a community corrections center ("CCC") when in fact the BOP lacked such authority by law.  *Id*. at 296.  The Third Circuit stated that the appropriate test inquires whether the sentencing court (1) made an objectively ascertainable error (one that can be ascertained from the record) and (2) materially relied on that error in determining the appropriate sentence.  *Id*. at 300-01.  The appellate court held that the district judge committed an error of law in believing that the BOP had the authority to place Eakman in a CCC when the BOP lacked such authority under the law.  *Id*. at 301.  Concluding that the appellant was entitled to a hearing under § 2255, the Court of Appeals remanded the case to the district court to determine whether the judge *relied* upon his mistaken belief that the BOP had the discretionary authority to assign Eakman to a CCC.  *Id*. at 303.  The appellate court stated that a prisoner is not entitled to a hearing unless there is some basis in the record to support his argument that the sentencing court relied at least in part on bad information.  *Id*. at 302.  "[I]t is enough for the prisoner to show that the district court paid sufficient heed to the error that the integrity of the sentencing proceeding is called into doubt."  *Id*.

Here, the sentencing court presumably believed that Gilmore may have been eligible for the BOP's shock incarceration program, "for otherwise the judge's recommendation to that effect would have been pointless," *id*. at 301.  Under *Eakman*, the judge's assumption would constitute an objectively ascertainable error.  However, the court did not "pa[y ] sufficient heed to the error that the integrity of the sentencing proceeding is called into doubt," *id*. at 302.  The record does not suggest that the court's assumption that Gilmore would be eligible for the SI Program influenced its imposition of an 80-month sentence.  Rather, the sentencing judge, upon defense counsel's request, merely offered a recommendation to the BOP

10

that Gilmore be "considered" for the program.  By contrast, the district court in *Eakman* recommended that Eakman's sentence "*should be served* at a community corrections center with the defendant being granted immediate work release status."  *Id*. at 296 (emphasis added).  Moreover, the *Eakman* court specifically concluded that based on the record "it appears highly likely (at a minimum) that the district court would have imposed a different sentence had it not been for its contrary understanding."  *Id*.  Although this Court agrees with the Third Circuit that "due process clearly guarantees all defendants the right to be sentenced under an accurate understanding of the law," *id*. at 302, it does not appear "highly likely" that Gilmore would have received a different sentence had the court understood that he was not eligible for the SI Program.  As further evidence that Judge Matia's BOP recommendation was merely ancillary, the judge did not offer his recommendation regarding the SI Program until well after he imposed the 80-month sentence.  Importantly, Gilmore did not suffer any prejudice from counsel's and the court's misunderstanding of BOP policy.  Gilmore argues that the sentencing court departed downward under the safety valve provision and could have further departed downward.  However, the sentencing judge's decision to deny a request to sentence Gilmore to the low end of the *applicable* Guidelines range strongly suggests that the court would not have further departed downward.  There is no indication that the denial of a 70-month sentence, and the subsequent imposition of an 80-month sentence, was based, even in part, on the assumption that Gilmore would participate in the SI Program, *see Petr.'s Br.,* at 16, or that a lower sentence would have been imposed had counsel not requested placement in the SI Program.  These arguments are merely speculative.  Under these circumstances, Gilmore cannot demonstrate a reasonable probability that his attorney's misunderstanding of BOP policy had any effect on the

outcome of the case.

**V.**

A review of the record shows that Gilmore cannot demonstrate that, but for counsel's error, the outcome of the proceedings would have been different.  Accordingly, Petitioner Leon Gilmore's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody  (**ECF No. 1**) is hereby **DENIED**.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster 10/28/05*
**Dan Aaron Polster**
**United States District Judge**